UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MELISSA T., n/k/a MELISSA C.,<br><br>        Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,<br><br>        Defendant. | CIV. 17-5048-JLV<br><br>ORDER |

Plaintiff Melissa T., n/k/a Melissa C., filed a complaint appealing the final decision of Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration, finding her not disabled. (Docket 1). The Commissioner denies Melissa C. is entitled to benefits. (Docket 7). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 9). The parties filed their JSMF. (Docket 10). For the reasons stated below, Melissa C.'s motion to reverse the decision of the Commissioner (Docket 13) is denied.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 10) is incorporated by reference. Further recitation of salient facts is incorporated in the discussion section of this order.

On June 9, 2014, Melissa C. filed an application for disability and disability insurance benefits. Id. ¶ 1. Melissa C. alleges an onset of disability date of August 23, 2013. Id. On May 24, 2016, the administrative law judge

("ALJ") issued a decision finding Melissa C. was not disabled. Id. ¶ 3; see also Administrative Record at pp. 19-29 (hereinafter "AR at p. ___"). The Appeals Council denied Melissa C.'s request for review and affirmed the ALJ's decision. (Docket 10 ¶ 3). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which Melissa C. timely appeals.

The issue before the court is whether the ALJ's decision of May 24, 2016, that Melissa C. "has not been under a disability within the meaning of the Social Security Act from August 23, 2013, through [May 24, 2016]" is supported by substantial evidence in the record as a whole. (AR at p. 19); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to DI benefits under Title II. 20 CFR § 404.1520(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation

does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment— one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 19-29).

**STEP ONE**

At step one, the ALJ determined Melissa C. had "not engaged in substantial gainful activity since August 23, 2013, the alleged onset date[.]" Id. at p. 21 (bold omitted).

**STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It

4

is the claimant's burden to establish that [her] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

The ALJ determined Melissa C. suffered from the following severe impairments: "cervical degenerative disc disease, status-post cervical fusion at C3-C4, lumbar degenerative disc disease, status-post miscrodiscectomy and SI joint fusion, left ankle degenerative changes, right elbow epicondylitis, carpal tunnel syndrome, and right knee chondromalacia." (AR at p. 21) (bold omitted). Melissa C. does not challenge this finding. (Dockets 13 & 17).

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of

5

the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled. At that point the Commissioner "acknowledges [the impairment or combination of impairments] are so severe as to preclude substantial gainful activity. . . . [and] the claimant is conclusively presumed to be disabled." Bowen v. Yuckert, 482 U.S. 137, 141 (1987). A claimant has the burden of proving an impairment or combination of impairments meet or equals a listing within Appendix 1. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). If not covered by these criteria, the analysis is not over, and the ALJ proceeds to the next step.

At this step the ALJ determined Melissa C.'s severe impairments did not meet or equal a listing under Appendix 1. (AR at p. 23). Melissa C. does not challenge this finding. (Dockets 13 & 17).

**STEP FOUR**

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity ("RFC"). 20 CFR § 404.1520(e). RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from her impairments. 20 CFR §§ 404.1545(a)(1). In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe. 20 CFR §§ 404.1545(e). All of the relevant medical and non-medical evidence in the record must be considered. 20 CFR §§ 404.1520(e) and 404.1545.

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence."). The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.'" Id. (citing Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

"In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments." Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003)). As stated earlier in this discussion, a severe impairment is one which significantly limits an individual's physical or mental ability to do basic work activities. 20 CFR § 404.1521(a).

The ALJ determined Melissa C. had a RFC "to perform light work as defined in 20 CFR 404.1567(b)[.]"[1] (AR at p. 23) (bold omitted). The ALJ continued:

> [S]he can lift and/or carry up to 30 pounds occasionally and 10 pounds frequently. She can walk and/or stand a total of 6 hours per 8-hour workday, not to exceed 20 minutes of walking at one time or 45 minutes of standing at one time. She can sit a total of 8 hours (with normal breaks) per 8-hour workday, not to exceed one hour at one time. She can occasionally stoop, crouch, balance, and climb stairs/ramps. She can seldom kneel, and she can never crawl or climb ladders/ropes/scaffold. She can perform gross and fine handling on a frequent basis with her bilateral upper extremities, but not on a repetitive basis. She can seldom reach overhead, and can only lift 1-pound objects overhead. She must avoid concentrated exposure to extreme cold and vibrations.

Id. (bold omitted). In reaching this conclusion, the ALJ considered Melissa C.'s testimony at the administrative hearing and found her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at p. 24.

---

[1]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR § 404.1567(b).

Melissa C. argues the ALJ committed error in coming to this conclusion. (Docket 13). According to Melissa C., "the ALJ simply ignored and failed to mention important symptoms and paid lip service to the requirement that a comprehensive analysis must be done before rejecting [her] credibility." Id. at p. 6. Specifically, Melissa C. alleges the case law reveals the ALJ erred in failing to account for her "need to lie down and the effects of her medications[.]" Id. The medication at the center of Melissa C.'s claim is tramadol.[2] Melissa C. relies on Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), which established five factors an ALJ must consider when evaluating a claimant's subjective complaints. (Docket 13 at pp. 6-13).

"When analyzing a claimant's subjective complaints of pain, the ALJ must examine: (1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) precipitating and aggravating factors, (4) the dosage, effectiveness and side effects of any medication, and (5) functional restrictions." Perks v. Astrue, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (citing Polaski, 739 F.2d at 1322). The applicable regulation on a claimant's subjective allegations of pain is 20 CFR § 404.1529, "which largely mirror[s] *Polaski*[.]" Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004). The court must "defer to the ALJ's evaluation of [Melissa C.'s] credibility, provided

---

[2]A narcotic pain reliever, "[t]ramadol is used to relieve moderate to moderately severe pain[.]" Tramadol, PubMed Health, U.S. National Library of Medicine, available at https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012486/.

that such determination is supported by good reasons and substantial evidence, even if every factor is not discussed in depth[.]" Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014) (internal citation and quotation marks omitted); see Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004) ("The ALJ need not explicitly discuss each *Polaski* factor."). "It is sufficient if [the ALJ] acknowledges and considers those factors before discounting a claimant's subjective complaints." Strongson, 361 F.3d at 1072. "The ALJ may properly discount the claimant's testimony where it is inconsistent with the record." Perks, 687 F.3d at 1093. "The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard." Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).

At the outset of the ALJ's findings underlying the RFC, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p." (AR at p. 24). The ALJ noted Melissa C. "alleges an inability to perform work activity due primarily to neck and lower back pain that limits her ability to sit, stand, or walk for extended periods, and further limits her ability to lift or carry objects weighing more than 20 pounds. She also alleges carpal tunnel pain and upper extremity pain further limits her ability to finger, handle, or feel." Id. The ALJ then found Melissa C.'s statements about her

10

pain and related symptoms "are not entirely consistent with the medical evidence and other evidence in the record[.]"  Id.

The ALJ set forth the medical evidence underlying his determination. Id. at pp. 24-27.  The court closely reviewed the ALJ's account of the medical evidence and focuses only on the essential pieces of evidence here.  Melissa C. visited Peter V., M.D., one of her treating physicians, in May 2013.  (AR at p. 25).  Melissa C. worked as a counseler at the Black Hills Children's Home, and Dr. V. "wrote [Melissa C.] a work restriction note in May 2013 indicating she had to avoid directly handling aggressive children."  Id.; see Docket 10 at p. 2 n.1.  After she stopped work in August 2013, Dr. V. referred Melissa C. for a functional capacity evaluation in December 2013.  (AR at p. 25).  The results of the evaluation were as follows:

> [Melissa C.] could perform light physical demand jobs for an 8-hour day according to the Dictionary of Occupational Titles.  Specific testing showed she had difficulty with shoulder lifting or activity, and she had some right elbow and hand pain with prolonged activity.  She said she could not crawl or squat due to knee pain, so this was not tested.  Knee and ankle strength was noted to be 5/5, except for left eversion at 4/5.  She could climb and descend stairs, with some jerkiness to her steps.  The physical therapist performing the evaluation, Nano Johnson, treating source, noted [Melissa C.] did not demonstrate any symptom exaggeration, and she gave good effort during tests.

Id. (internal citations omitted).

Dr. V. completed a "Return to Work Guidelines" statement in January 2014 "in which he noted [Melissa C.] had no hourly work restrictions."  Id. The statement indicated "she could frequently sit (66% of the workday), and

11

occasionally stand, walk, bend, and twist (33% of the workday)."  Id. at p. 26.
While treating Melissa C. in May 2014, Dr. V. "suggested she try Tramadol instead of Gabapentin."  (Docket 10 ¶ 9).  Melissa C. received treatment throughout 2014 and 2015 for her neck pain.  (AR at p. 26).

Another functional capacity evaluation of Melissa C. occurred in March 2016.  Id.  Physical therapist Myron S., a treating source, performed "thorough objective testing," and the "valid results indicated [Melissa C.] was capable of light physical exertion jobs, and she could sustain such for an 8-hour workday."  Id.  The ALJ found "[w]hen compared to the functional capacity evaluation from December 2013, evidence indicates [Melissa C.'s] functionality remained stable throughout such period.  Indeed, her symptoms likely improved, because the 2016 test results showed she could frequently sit, stand, or walk."  Id.

In a March 2016 treatment note, Dr. V. noted "the second [functional capacity evaluation] results were unchanged from the first, and he noted [Melissa C.] could frequently walk, stand, or twist[.]"  Id. at p. 27.  However, in April 2016, Dr. V. submitted a medical source statement indicating Melissa C. "could only stand/walk less than 1 hour per 8-hour workday, and could only sit about 3 hours per 8-hour workday.  He further indicated she had to change positions between walking, standing, and sitting every 15-30 minutes."  Id.  The ALJ gave "no weight" to this medical source statement because the ALJ found "it is in direct conflict with the objective results of the functional capacity

12

evaluation from the month prior." Id. The ALJ also noted the inconsistency between Dr. V.'s March 2016 treatment note and his April 2016 medical source statement. Id.

Melissa C. has two main arguments: (1) the ALJ failed to sufficiently analyze the Polaski factors, and (2) the ALJ is incorrect about whether Melissa C.'s allegations about her side effects with tramadol and need to lie down are consistent with the medical evidence. (Docket 13). Melissa C. does not prevail on either.

As the court noted above, the "ALJ need not explicitly discuss each *Polaski* factor." Strongson, 361 F.3d at 1072. The ALJ stated he considered Melissa C.'s testimony as 20 CFR § 404.1529 directs. (AR at p. 24). Under 20 CFR § 404.1529(c)(3)(iv), an ALJ considers the "type, dosage, effectiveness, and *side effects* of any medication [the claimant] take[s] or ha[s] taken to alleviate [ ] pain or other symptoms[.]" (emphasis added). Earlier in the decision, where the ALJ reviewed the evidence on possible mental disorders, the ALJ generally evaluated Melissa C.'s daily living, social functioning, and concentration/persistence/pace. (AR at p. 22). Following the ALJ's finding that Melissa C.'s allegations of her symptoms were "not entirely consistent with the medical evidence[,]" the ALJ set out the evidence reflecting that inconsistency. Id. at p. 24. Specifically, the ALJ gave "great weight" to the functional capacity evaluations from December 2013 and March 2016, both of which concluded Melissa C. could perform light work for an 8-hour workday,

contravening her claims about her need to lie down based on medication side effects.  Id. at pp. 25-27.  Even though "every factor [was] not discussed in depth[,]" the court finds the ALJ's decision does not violate Polaski because the decision "is supported by good reasons and substantial evidence[.]"  Smith, 756 F.3d at 625.

"The ALJ did not err by failing to discuss expressly some of the other factors, including any side effects from [Melissa C.'s] medication."  Buckner v. Astrue, 646 F.3d 549, 558-59 (8th Cir. 2011).  The court's "review of the ALJ's decision, in light of the entire administrative record, shows that there were inconsistencies between [Melissa C.'s] allegations . . . and the evidence as a whole."  Id. at 559.  Consequently, "the ALJ did not err in evaluating [Melissa C.'s] credibility."  Id.; see also Robinson v. Comm'r of Soc. Sec., 649 Fed. Appx. 799, 802 (11th Cir. 2016) (finding no error where the ALJ stated she considered the applicable regulation in discounting the claimant's testimony despite not specifically mentioning the claimant's allegations regarding medication side effects).

In Melissa C.'s reply brief, she emphasizes three cases support her position.  (Docket 17 at p. 2) (citing Cline v. Sullivan, 939 F.2d 560, 569 (8th Cir. 1991); Jeffrey v. Sec'y of Health & Human Servs., 849 F.2d 1129, 1133 (8th Cir. 1988); Beeler v. Bowen, 833 F.2d 124, 127-28 (8th Cir. 1987)).  The court finds those cases are distinct from this one.  In Jeffrey, "the ALJ did not identify any specific piece of evidence that would discredit Jeffrey's complaints of pain," and the record lacked "sufficient evidence to discount her complaints."

14

Jeffrey, 849 F.2d at 1132. But in this case, the ALJ relied on specific medical records, namely the two functional capacity evaluations, which were not consistent with Melissa C.'s allegations. See supra at pp. 11-14. The Beeler case involved an ALJ discounting the claimant's subjective complaints where "the only inconsistences that the ALJ indicated were the statements of the claimant that the pain she now suffers is different from the pain experienced when she injured her tailbone, and her testimony that she sometimes dropped coffee cups coupled with her testimony that she could lift a gallon of milk." Beeler, 833 F.2d at 127. But in this case, the ALJ provided a thorough account of the medical evidence, including the functional capacity evaluations, which he determined was inconsistent with Melissa C.'s testimony. And in Cline, the inconsistencies the ALJ enunciated lacked support in the record, which is not the situation with Melissa C.'s case, where the ALJ's credibility finding adequately reflects the medical evidence. See Cline, 939 F.2d at 565.

Melissa C. targets no other aspect of the ALJ's decision for error.

**ORDER**

Based on the above analysis, it is

ORDERED that Melissa C.'s motion to reverse (Docket 13) is denied.

Dated May 22, 2018.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                CHIEF JUDGE